**Joseph J. Rego, Esq. (SBN: 163183)**

**Law Office of Joseph Rego**
**3443 Camino Del Rio S., Ste. 212**
**San Diego, CA 92108**
**Tel: (619) 564-8725**
**Fax: (619) 564-8807**
**Email: joerego@regolaw.com**

Attorney for Plaintiff CHAUNTEL RAMPP

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

CHAUNTEL RAMPP,

           Plaintiff,

    vs.

OCWEN FINANCIAL
CORPORATION,
OCWEN LOAN SERVICING LLC,
NOMURA CREDIT & CAPITAL,
INC.,
EQUITY ONE, INC.,
WELLS FARGO BANK, NATIONAL
ASSOCIATION,
HSBC BANK USA, NATIONAL
ASSOCIATION,

           Defendant(s).

Case Number: 11-cv3017 BTM (NLS)

**PLAINTIFF'S REPLY TO RESPONSE TO MOTION FOR SUMMARY JUDGMENT**

**Date: 01.24.14**
**Time:  11:00 a.m. (No oral argument unless requested by his Honor)**
**Original Docket Entry -78-**

TRIAL DATE: Not Set

Hon. Chief Judge Barry Ted Moskowitz

## PROCEDURE:

1. Plaintiff filed Motion for Summary Judgment; the matter was continued per mutual stipulation of Counsel to allow completion of Discovery. Defense Counsel conducted Deposition of James Rampp (not a party to this action), and Plaintiff Chauntel Rampp.

2. Counsel for Plaintiff appeared with the permission of Defense Counsel, at the deposition of James Rampp, however James Rampp was not represented by counsel during the deposition.

3. Counsel for Plaintiff did appear with his client the Plaintiff, the Deposition took approximately two days, and was continued due to calendar conflicts of the parties, however the Deposition was completed.

4. As the Court will recall this is a predatory loan law suit in specific performance for equity to reinstate the loan modification entered into by this Plaintiff and Litton Loan Services, who assigned the loan to the Defendants named.

5. This Court set an initial order approximately 16 months ago on Temporary Restraining Order Request, which ratified the contract between the parties, finding that the contract satisfied the Statue of Frauds, and ordered that this Plaintiff deposit with the Clerk of the Court the monthly payment. The Plaintiff has done that since the inception of the order, and there is approximately $43,000.00 on deposit with the Clerk of the Court.

6. The Plaintiff filed for Summary Adjudication requesting that the Temporary Order issued by this Court remain in full force an effect, and become a permanent ruling, and that the Defendant's be ordered to comply with the initial contract as written.

7. The remaining issue of legal fees as called for in the contract could be adjudicated per noticed motion.

8. Plaintiffs rely on the arguments and authorities presented in their initial motion and supplement this response to the arguments raised in opposition.

9. Plaintiff response includes the exhibit presented and the Declaration of Counsel in support.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. THERE WAS A VALID CONTRACT BETWEEN THE PARTIES AND THE COURT MUST RATIFY THE CONTRACT AND GRANT THE SUMMARY JUDGMENT

10. In order for the Court to grant the relief requested the Court must ratify the existence of the contract between the parties.

11. This Court has already ruled, and it is res judicata in this matter that the contract *did not* violate the Statue of Frauds when the Court issues the preliminary order posting payments to the Clerk of the Court.

12. Therefore according to the existing ruling there is a valid contract, which affords the remedy requested of Specific Performance.

### II. WAS THERE FRAUD IN THE INDUCEMENT BY THE PLAITNIFF IN FORMATION OF THE CONTRACT WHICH WOULD JSUTIFY A NOVATION OF THE AGREEMENT AND RENDER IT VOID?

13. It would appear that now the Defendant attempt to argue formation Fraud which would give rise to novation of the agreement, therefore not obligating this Defendant to the contract.

According to the Arguments raised in the Reply it appears as though the Defense is stating because JAMES RAMPP the former spouse of the Plaintiff testified in Deposition that he did not intend to reside in the residence, nor did he intend to occupy it there was fraud in the inducement for the loan.

14. This argument has no merit. The predecessor in interest to these Defendants Litton Loan Servicing had not one, not two but three

attorneys representing their corporate interests the modification process of this contract began in 2010, and was handled by three different attorneys, (See Attached Exhibits, Original Loan Packet sent to Counsel One, Request for Registration of the Loan Modification with Counsel Two, and finally last year of communication with Counsel Number three all verifying who would reside and whose income was being used for qualification).

15. The last Attorney in San Diego Timothy Silverman brokered the final agreement. Throughout the entire time and from the beginning it was made clear to Litton that James Rampp would not occupy nor would he reside in the house, the parties were going the completion of a divorce, and indeed that is why Litton sought the income information of Russell Blackwood, [deceased 01.2013], to qualify the Plaintiff on this contract.

16. There was NO Fraud in the Inducement, at any time to LITTON, the lender qualified this plaintiff on the information it requested again knowing that her previous spouse would not maintain possession of the house.

17. A simple review of the Bankruptcy Docket does verify this argument, including but not limited to the various law in motion matters brought before the Bankruptcy Court, the Motion for Relief form Stay brought by

Litton's Counsel, and their Response to the Adversarial Complaint filed

by this Plaintiff in that venue to protect her property.

18. Again bear in mind that the Trustee paid Litton $14,330.00 collected

form the Plaintiff and applied to the mortgage before the loan contact was

executed in 2011.

19. The last Attorney representing Litton Timothy Silverman brokered the

final agreement in San Diego. Throughout the entire time, and from the

beginning of this Plaintiffs work with his firm and the information

supplied by this Plaintiff, Counsel for Litton Mr. Silverman's Office was

aware of the occupancy and qualification status of the parties.

Furthermore Mr. Silverman had received all this information from

Litton's previous counsel, it was clear to Litton that James Rampp would

not occupy nor would he reside in the house, nor was his financial data to

be considered in the process of issuing the contract.

Counsel for Litton knew the parties had completed a divorce and the

house would not belong to him.

This is why Litton sought the income information of Russell Blackwood,

[deceased 01.2013], to qualify the Plaintiff on this contract.

20. There was NO Fraud in the Inducement, at any time to LITTON, the

lender qualified this plaintiff on the information it requested again

knowing that her previous spouse would not maintain possession of the house.

### III. ASSUMING THAT THERE WAS A VALID CONTRACT WITH NO FORMATION ISSUES THE SECOND QUESTION WHICH MUST BE ADDRESSED IS [WERE THERE ANY CONDITIONS PRECEDENT, SUBSEQUENT, OR CONCURRENT, AFTER FORMATION BREACHED BY THIS PLAINTIFF WHICH COULD BE CONSTRUED AS A MATERIAL BREACH OF CONTRACT]?

21. Assuming a valid contract from the inception, it then appears that Defense argues that Plaintiff beached by not making the payments on time. This is not correct. Plaintiff made all of the payments on time, there was initial confusion as to where to send the money and to whom. This confusion was dealt with by the Office of Mr. Silverman, and it was his responsibility to make sure that the money was sent to his client on time. Both the plaintiff and her counsel made repeated requests to his office where to send the money so that it would be received timely.

22. However assuming for the sake of argument that a payment was late this purported breach would only give rise to damages for the Defense, not the remedy of vitiating the contract.

23. Where parties acquiesce by conduct to a minor breach and continue to accept performance the remedy is one of damages. Nowhere in the history of this contract prior to assignment to Ocwen did Litton claim any type of breach because of a later payment.

### IV. LASTLY SHOULD THESE DEFENDANTS BE ENTITLED TO ANY RESTITUION OF THE BACK PAYMENTS ON THIS CONTRACT?

24. Counsel for Plaintiff thinks it is worth comment to address another concern, which is assuming our request is granted should these Defendants be entitled to any back payments on the loan. It does appear

that when one party acts in such bad faith in the assumption of a contract, and effectively stops accepting the payments, and placing the real estate in Default for no apparent reason, that really they should be estopped from recovering any back payments on the loan.

25. It would appear that this is actually unjust enrichment to these Defendants. Had the agreement simply been honored pursuant to our informal request none of this litigation would have been necessary. Has Ocwen and its successors simply done their due diligence on the loan history all if this could have been circumvented.

## IV.  CONCLUSION

26. Movants respectfully request the relief sought in their motion, set to be heard 01.24.2014, and for such other relief as this Court may deem appropriate. Accordingly, summary judgment should be granted against Defendants and specific performance granted in favor of Plaintiff, allowing her to do what she has tried to do from the beginning, perform under the terms of the contract.

Respectfully submitted this 18th day of December, 2013.

/s/ Joseph Rego

Joseph Rego
Attorney for Plaintiff
Chauntel Rampp