# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAUNTEL RAMPP,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>OCWEN FINANCIAL CORPORATION, OCWEN LOAN SERVICING LLC, NOMURA CREDIT & CAPITAL, INC., EQUITY ONE, INC., WELLS FARGO BANK, NA, and HSBC BANK USA, NA,<br><br>　　　　　Defendants. | Case No. 11-cv-3017-BTM-NLS<br><br>**ORDER DENYING CROSS MOTIONS FOR SUMMARY JUDGMENT** |

The parties have filed cross-motions for summary judgment. (Docs. 78, 90.) For the reasons discussed below, the Court **DENIES** each motion.

## I. BACKGROUND

Plaintiff Chauntel Rampp alleges that Defendants, most notably Ocwen Financial Corporation and Ocwen Loan Servicing, LLC (collectively "Ocwen"), wrongfully refused to honor a loan modification agreement Plaintiff entered into with the prior loan servicer, Litton Loan Servicing LP ("Litton"). On September 7, 2005, James and Chauntell Rampp obtained an adjustable rate mortgage in the amount of $400,000.00, secured by a Deed

of Trust on the property located at 244 Avalon Drive, Vista, CA 92083 (the "Property").  On the same day, James and Chauntell Rampp obtained a $100,000 loan secured by a second Deed of Trust on the Property.  The Deed of Trust and the Note provided the lender with authority to accelerate the loan and commence foreclosure proceedings in the event of default.  (Defs.' Exs. 4, 5.)

On January 22, 2009, a Notice of Default was recorded against the Property.  (Pl.'s Ex. G.)  According to the Notice of Default, the Rampps were in arrears in the amount of $18,956.41.  Bankruptcy proceedings, as well as divorce proceedings, ensued shortly thereafter.  Plaintiff retained responsibility for payment of the loan after the divorce, and Mr. Rampp transferred his interest in the property to Plaintiff.  (Pl.'s Dep. 60-62, Ex. 10.)

In January 2011, Plaintiff received a "commitment letter" on Litton Loan Servicing letterhead offering to modify the terms of the loan.  (Pl.'s Ex. P.)  The offer was made by "Prommis Solutions as authorized agent for Litton Loan Servicing LP."  The letter set forth the terms of the modification, including the new principal balance and monthly payment ($2,391.42) beginning March 1, 2011.  The letter stated that to accept the offer for a modified mortgage, the Rampps must sign and return the letter by February 7, 2011.  The letter included terms for "Acceptance of Offer for Modified Mortgage," followed by signature lines under the words: "I/We have had the opportunity to consult with legal and/or tax counsel prior to accepting this offer, and whether or not I/we retained such counsel, I/we have agreed to these terms and conditions."  The Rampps signed the letter on January 31, 2011, and ostensibly returned it by February 7, 2011, resulting in the issuance of a formal loan modification agreement ("LMA") and related documents.  These documents were signed by the Rampps on April 4, 2011.  (Pl.'s Ex. H.)

In a letter dated August 15, 2011 (Pl.'s Ex. I), the Rampps were notified by Litton that Ocwen Loan Servicing, LLC was taking over the servicing of the account. Litton assured the Rampps: "The transfer of the servicing of your account does not affect any term or condition of your financing agreement, other than terms directly related to the servicing of your account." Yet in a letter dated September 24, 2011, Ocwen Loan Servicing, LLC informed Plaintiff that she was not eligible for the modification. Ocwen refused to accept payments under the LMA, and Plaintiff filed this lawsuit thereafter.

The Court granted Plaintiff's request for a preliminary injunction enjoining Defendants from foreclosing on the encumbered property, and Plaintiff has since deposited payments with the Clerk of Court to satisfy the bond requirement imposed by the Court.

## II.  LEGAL STANDARD

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving

1  party's case; or (2) by demonstrating that the nonmoving party failed to
2  establish an essential element of the nonmoving party's case on which the
3  nonmoving party bears the burden of proving at trial. Id. at 322-23.
4  "Disputes over irrelevant or unnecessary facts will not preclude a grant of
5  summary judgment." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors
6  Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

7  Once the moving party establishes the absence of genuine issues of
8  material fact, the burden shifts to the nonmoving party to set forth facts
9  showing that a genuine issue of disputed fact remains. Celotex, 477 U.S. at
10 314; In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010). The
11 nonmoving party cannot oppose a properly supported summary judgment
12 motion by "rest[ing] on mere allegations or denials of his pleadings."
13 Anderson, 477 U.S. at 256. When ruling on a summary judgment motion,
14 the court must view all inferences drawn from the underlying facts in the light
15 most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v.
16 Zenith Radio Corp., 475 U.S. 574, 587 (1986).

17
18                          **III. DISCUSSION**
19 **A.     Plaintiff's Motion for Summary Judgment**
20 Plaintiff seeks summary judgment as to her breach of contract claim.
21 The elements of breach of contract are: (1) existence of the contract; (2)
22 plaintiff's performance or excuse for nonperformance; (3) defendant's
23 breach; and (4) resulting damages to the plaintiff. Reichert v. General Ins.
24 Co., 68 Cal. 2d 822 (1968); CDF Firefighters v. Maldonado, 158 Cal. App.
25 4th 1226, 1239 (2008). According to Plaintiff, Defendants breached the
26 contract by refusing to accept payments and initating foreclosure on the
27 property. Plaintiff relies upon a September 24, 2011 letter from Ocwen
28 stating that she was ineligible for a modification and an October 15, 2011

letter from Plaintiff in response. (Pl.'s Exs. J and K.)

Defendants argue that the LMA is not enforceable because Wells Fargo's assent, via Litton, was "obtained by misrepresentation, concealment, circumvention, or unfair practices" in violation of Cal. Civ. Code § 3391(3). According to Defendants, the Rampps improperly duped Litton into assenting to the LMA by (a) incorrectly affirming in the January 24, 2011 offer letter that they occupied the subject premises as their primary residence, and (b) improperly executing the LMA without any intention that Mr. Rampp be bound by it or make any payments. (Defs.' Opp'n at 9-10.)

Defendants support their arguments with sworn statements of Mr. and Mrs. Rampp. (See, e.g., Pl.'s Dep. 74-77, 91; Mr. Rampp Dep. 47, 48, 53-54.) Those statements indicate that, at the time they represented the property as their primary residence, they in fact lived elsewhere. Viewing this evidence in the light most favorable to Defendants, the Court finds it sufficient to establish a triable issue as to the enforceability of the LMA, i.e., whether there was a material misrepresentation by the Rampps that would excuse performance under the LMA. Summary judgment in favor of Plaintiff is therefore unwarranted.[1]

## B.     Defendants' Motion for Summary Judgment

Defendants seek summary judgment or partial summary judgment in their favor, arguing (1) that the LMA was not enforceable because it was procured by fraud, and (2) that the reduction in principal pursuant to the LMA is unenforceable because it is inconsistent with the "Pooling and Servicing Agreement" between Ocwen and HSBC. (Defs.' Mot. 7-9.) Defendants also argue (3) that, even if Plaintiff prevails, the remedy of specific performance is unavailable due to Plaintiff's misrepresentations and

---

[1] In light of this disposition, Defendants' objections to Plaintiff's supporting evidence (Doc. 84-8) are moot.

untimely payments.[2]

### 1. The Pooling & Service Agreement

Defendants argue that they have no power to meet obligations under the LMA that are prohibited by the terms of another contract: the Pooling & Service Agreement ("PSA") executed by Defendants. (Defs.' Mot. at 20.) More specifically, they argue that the LMA is unenforceable to the extent it provides a reduction in principal because Ocwen, as a subservicer, lacked authority to reduce principal under the PSA. (Defs.' Mot. at 21.) Defendants mistakenly believe that this renders their performance under the LMA impossible or inequitable. The Court rejects this argument because it is undisputed that Ocwen acted as HSBC's agent, and a principal may be bound by an agent's *ultra vires* actions taken under ostensible authority. See Cal. Civ. Code §§ 2295, 2298, 2315-2317, 2334 ("A principal is bound by acts of his agent, under a merely ostensible authority, to those persons only who have in good faith, and without want of ordinary care, incurred a liability or parted with value, upon the faith thereof.") See also Phleger v. Countrywide Home Loans, Inc., 2009 U.S. Dist. LEXIS 17419, *30-31 (N.D. Cal. Mar. 3, 2009); Grigsby v. Hagler, 25 Cal.App.2d 714, 716 (1938); Yanchor v. Kagan, 22 Cal.App.3d 544, 549 (1971) (The "essential elements" of ostensible authority "are representation by the principal, justifiable reliance thereon by a third person, and change of position or injury resulting from such reliance."). Here, the January 2011 and August 2011 letters concerning the loan modification are evidence of Litton's and Ocwen's

---

[2] The Court rejects Plaintiff's argument that Defendants' arguments are foreclosed by *res judicata*, because the Court's determinations as to Plaintiff's motion for preliminary injunctive relief are not final judgments on the merits. See Univ. of Texas v. Camenisch, 451 U.S. 390, 395 (1981); Kuzinich v. Santa Clara Cnty., 689 F.2d 1345, 1350-51 (9th Cir. 1982). The Court also rejects as unsupported Plaintiff's argument that Defendants should be estopped from recovering back payments.

ostensible authority.

### 2. Fraud in the Inducement

Fraud in the inducement occurs when "the promisor knows what he is signing but his consent is induced by fraud, mutual assent is present and a contract is formed, which, by reason of the fraud, is voidable. In order to escape from its obligations the aggrieved party must rescind . . . ." Rosenthal v. Great Western Fin. Securities Corp., 14 Cal. 4th 394, 415 (1996) (citation, internal quotation marks, and alteration omitted). See also Cal. Civ. Code § 1572. Additionally, the LMA provides, in pertinent part: "All representations made by me pursuant to my/our request for the modified mortgage are true and have been and will be relied upon by Litton, and any breach of the representations will give Litton the right to terminate this commitment and could result in the pursuit of rights and remedies by Litton." (Ms. Rampp Dep., 76:16-25, Ex. 11.)

Defendants argue that Plaintiff lied when affirming or representing (by initials and signature above the signature block on the LMA) that "I am . . . now occupying the property as my/our primary place of residence." (Defs. Ex. 11 at 5.) Defendants also point to evidence that Mr. Rampp transferred his interest in the property to Plaintiff before executing the LMA, consistent with the Rampps' divorce agreement, and did not live on the premises at the time the LMA was executed. Indeed, both Mr. and Mrs. Rampp confirmed in deposition testimony that they did not live there at the time. (Def.'s Ex. 5, 74-76.) As Plaintiff has failed to refute this contention, the Court finds that Defendants have established a misrepresentation on the January 24, 2011 commitment letter.

However, Defendants point to no evidence that the misrepresentation

//

actually induced consent.  See generally Harris v. Miller, 196 Cal. 8 (1925); Royal Realty Co. v. Harvey Inv. Co., 95 Cal. App. 352, 361 (1928) (finding fraudulent inducement where there was a misrepresentation "material to the transaction").  There is no citation to, e.g., testimony explaining that those terms were material to this contract, or to any authority holding such language to be material to an agreement in the loan modification context.  Nor have Defendants conclusively established the absence of an intent to perform, as the record indicates that Plaintiff attempted to perform, albeit not always in a timely manner.

Moreover, Defendants have not established that they properly exercised the right to terminate or cancel.  See, e.g., Cal. Civ. Code § 1691.  Even assuming *arguendo* the misrepresentation as to primary residence constituted a fraudulent inducement, there is no authority indicating that the LMA is void *ab initio*.  Rather, under California law, as well as the plain terms of the contract, the misrepresentation creates a right of rescission or cancellation at the election of the aggrieved party.  See Rosenthal, 14 Cal. 4th at 415; Phleger, 2009 U.S. Dist. LEXIS 17419, *47 (N.D. Cal. Mar. 3, 2009).  See also Cal. Civ. Code §§ 1691-1693.  For these reasons, the Court cannot grant summary judgment in favor of Defendants.

### 3. Specific Performance

Specific performance is a remedy for breach of contract.  Golden West Baseball Co. v. City of Anaheim, 25 Cal. App. 4th 11, 49 (1994).  To establish a right to specific performance, the plaintiff must establish: (1) the contract terms are sufficiently definite; (2) consideration is adequate; (3) there is substantial similarity of the requested performance to the contractual terms; (4) there is mutuality of remedies; and (5) plaintiff's legal remedy is inadequate.  Blackburn v. Charnle, 117 Cal. App. 4th 758, 766 (2004);

Kaufman v. Goldman, 195 Cal.App.4th 734 (2011) (granting specific performance where tenant failed to rebut presumption that damages were an inadequate remedy); Henderson v. Fisher, 236 Cal. App. 2d 468, 473 (1965). See also Cal. Civ. Code. §§ 3384-87, 3390, 3391. Specific performance cannot be compelled by a party who has not "fully and fairly performed all the conditions precedent on his part to the obligation of the other party, except where his failure to perform is only partial, and either entirely immaterial, or capable of being fully compensated, in which case specific performance may be compelled, upon full compensation being made for the default." Cal. Civ. Code § 3392. Moreover, specific performance is unavailable against a party whose assent was obtained "by the misrepresentation, concealment, circumvention, or unfair practices of any party to whom performance would become due under the contract, or by any promise of such party which has not been substantially fulfilled." Id. § 3391[3].

    Defendants argue that Plaintiff breached the LMA by failing to make timely payments in March, July, September, and October of 2011. Ms. Rampp's deposition testimony indicates that her March 2011 payment was three months late and that her July and October 2011 payments were either late or never made by her. (Ms. Rampp. Dep. 100-101, 133-138.) Nonetheless, it appears that Defendants may have waived the first late payment and they rejected the modification as of September 24, 2011. Finally, Defendants argue that Plaintiff's misrepresentation as to her primary residence divests her of a right to seek specific performance of the LMA. Defendants rely upon Cal. Civ. Code § 3387, which states, *in extenso*: "It is to be presumed that the breach of an agreement to transfer real property cannot be adequately relieved by pecuniary compensation. In the case of a

single-family dwelling which the party seeking performance intends to occupy, this presumption is conclusive. In all other cases, this presumption is a presumption affecting the burden of proof." Viewing the evidence in the light most favorable to Plaintiff, the Court finds that there is a genuine issue as to whether Ms. Rampp *intended* to occupy the premises at the time she signed the LMA.  See Ms. Rampp Dep. 77:1-11 ("Q. So you were hoping to move back into the Avalon property?  A.  I was.  Yes, I was.")  The Court therefore declines to grant summary judgment as to the whether specific performance is a potential remedy in this case.

### III.  CONCLUSION

For the reasons discussed above, Plaintiff's motion for summary judgment (Doc. 78) and Defendants' motion for summary judgment (Doc.90) are **DENIED**.

**IT IS SO ORDERED.**

Dated: September 29, 2014

**BARRY TED MOSKOWITZ**
Chief United States District Judge